## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RYAN FLANAGAN,

  Plaintiff,

  v.

SCRIPTPRO, LLC,

  Defendant.

Case No. 2:17-cv-02586-HLT

---

## MEMORANDUM AND ORDER

  Plaintiff Ryan Flanagan brings this action against his former employer, Defendant ScriptPro, LLC, pursuant to the Americans with Disabilities Act as Amended ("ADAAA"), 42 U.S.C. § 12101, *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, alleging disability discrimination, failure to accommodate, retaliation, and interference with his right to FMLA leave. Defendant moves for summary judgment on all claims. Doc. 51. For the following reasons, the Court grants summary judgment in favor of Defendant on each of Plaintiff's claims.

## I. BACKGROUND[1]

### A. Plaintiff's Employment

  Defendant is engaged in the business of developing, manufacturing, marketing, and selling automated prescription drug systems and related software. Doc. 52 at 3 ¶ 1; Doc. 54 at 12 ¶ 1. Defendant employed Plaintiff from June 2014 through his termination on September 9, 2016, first

---

[1] For purposes of summary judgment, the following facts are uncontroverted or recited in the light most favorable to Plaintiff as the nonmoving party.

as a Field Logistics Operations Analyst and then, beginning in June 2015, as a Technical Support Analyst I ("TSA I"). Doc. 50 at 2; Doc. 52 at 3 ¶ 2; Doc. 54 at 12 ¶ 2.

As a TSA I, Defendant tasked Plaintiff with answering customer calls—many of which were emergent or urgent in nature—and resolving customer issues with Defendant's software and equipment. Doc. 52 at 4 ¶ 8; Doc. 54 at 13 ¶ 8. Defendant provides technical support (such as that performed by Plaintiff) to customers 24 hours per day, 365 days per year. *Id.* Employees in the customer service ("CS") department are scheduled based on the expected call volume and business need. Doc. 52 at 5 ¶ 11; Doc. 54 at 14 ¶ 11. Plaintiff's typical schedule as TSA I required him to work Wednesday through Sunday. Doc. 52 at 4 ¶ 7; Doc. 54 at 13 ¶ 7.

### B. FMLA Paperwork

Defendant's FMLA policy states that "[a]n employee may take a leave of absence because of a serious health condition that makes the employee unable to perform the functions of the employee's position." Doc. 54 at 7 ¶ 9; Doc. 57 at 38-39 ¶ 9. If one of Defendant's employees wants to take FMLA leave, the process is initiated by contacting Donna Markham (Human Resources Generalist). Doc. 52 at 12 ¶ 44; Doc. 54 at 25 ¶ 44. Ms. Markham provides the employee with the applicable Healthcare Certification Provider form. *Id.* When an employee is eligible for FMLA leave and returns the appropriate paperwork, Ms. Markham notifies the employee that FMLA leave has been approved. *Id.* Ms. Markham also contacts payroll to inform the payroll manager how many FMLA hours are to be granted in Defendant's timekeeping system, Kronos. *Id.*

Shortly after Plaintiff became a TSA I, he informed his manager, Preston Flint, that he suffered from Crohn's disease.[2] Doc. 52 at 13 ¶ 46; Doc. 54 at 25 ¶ 46. After Plaintiff apprised

---

[2] For purposes of this order, the Court makes no finding regarding Plaintiff's disability.

Mr. Flint of his condition, Mr. Flint—in accordance with the procedure outlined above—encouraged Plaintiff to visit with Human Resources if he decided he needed information about FMLA leave. Doc. 52 at 13 ¶ 47; Doc. 54 at 25 ¶ 47. Plaintiff subsequently met with Ms. Markham, and, on May 5, 2016, she emailed Plaintiff the FMLA paperwork and instructed him to ask his doctor to return the completed forms to her. Doc. 50 at 2.

Plaintiff contends he faxed the required paperwork to Ms. Markham in June or July 2016, requesting intermittent FMLA leave to cover unpredictable absences related to his Crohn's disease. Doc. 54 at 7 ¶ 19. But Plaintiff does not have a fax confirmation or other documentation showing the paperwork was transmitted. Doc. 52 at 13 ¶ 52; Doc. 54 at 26 ¶ 52. Plaintiff's medical records likewise do not include any entries reflecting that: (1) Plaintiff requested his doctor complete any FMLA paperwork, (2) any FMLA paperwork was in fact completed, or (3) any FMLA paperwork was faxed or otherwise provided to Plaintiff. Doc. 52 at 14 ¶ 54; Doc. 54 at 27 ¶ 54. There is no testimony or other evidence from Plaintiff's doctor or his doctor's staff that the paperwork was sent. Nor do Defendant's records from Kronos—which show the number of hours of leave employees have been granted for various purposes—reflect any FMLA hours for Plaintiff. Doc. 52 at 14 ¶ 59; Doc. 54 at 28 ¶ 59.

Contrary to Plaintiff's contentions, Defendant maintains it never received any FMLA paperwork from Plaintiff or his doctor. Doc. 52 at 13 ¶ 51. Ultimately, the parties agree that Plaintiff did not hear anything from Defendant indicating that an application for FMLA leave had been approved. Doc. 52 at 14 ¶ 55; Doc. 54 at 27 ¶ 55. And there is no indication in the record that Plaintiff followed up with Defendant about the alleged leave request. Plaintiff has testified that he believed his request had been approved because he did not hear otherwise. Doc. 54-3 at 1.

### C. Attendance and Other Disciplinary Issues

Throughout the course of his employment with Defendant, Plaintiff committed several violations of Defendant's attendance policy. CS team members—such as Plaintiff—are required to follow Defendant's standard attendance policies, as well as additional guidelines outlined in Defendant's Customer Technical Support Employee Handbook ("CS Handbook"). Doc. 52 at 5 ¶ 9; Doc. 54 at 13 ¶ 9. Under the heading "Guidelines for Punctuality," the CS Handbook provides in part that "[i]f a CS employee is going to be late, he or she should contact his or her support leader or the support manager via telephone, and inform him or her of the situation prior to the start of the shift." *Id.* When unable to meet his work schedule because of illness, a CS employee must call in at least two hours prior to the start of his shift.[3] *Id.* "Notification after the team member's scheduled start time is unacceptable and will not be tolerated." *Id.* The CS Handbook further advises that if a CS employee is perpetually late, management will take steps to correct the problem.[4] *Id.*

On February 27, 2016, Plaintiff was late to work due to personal problems and did not notify Defendant before his shift that he would be late. Doc. 52 at 7 ¶ 19; Doc. 54 at 16-17 ¶ 19. The next day, February 28, 2016, Plaintiff did not show up to work—again, due to family problems—and did not contact Defendant until an hour before the end of his shift. Doc. 52 at 7 ¶ 20; Doc. 54 at 17 ¶ 20. On March 2, 2016, Plaintiff received and signed a memorandum from Mr. Flint entitled "Missing your shift without notification," in which Plaintiff was reminded of Defendant's attendance policies and advised that breaking Defendant's

---

[3] Indeed, Plaintiff was informed during training for the TSA I position that he was expected to call in before his shift if he was going to be gone. Doc. 52 at 6 ¶ 18; Doc. 54 at 16 ¶ 18.

[4] These procedures also apply to employees needing FMLA leave, who are required to "follow [Defendant's] usual and customary call-in procedures, absent unusual circumstances." Doc. 54 at 7 ¶ 10; Doc. 57 at 39 ¶ 10.

expectations of employee conduct "could result in disciplinary action up to and including termination." Doc. 52 at 7 ¶ 21; Doc. 54 at 17-18 ¶ 21.

In April 2016, Plaintiff exhausted his accrued paid time off. Doc. 52 at 8 ¶ 22; Doc. 54 at 18 ¶ 22. Later that month, on April 27, 2016, Mr. Flint issued Plaintiff a verbal memorandum regarding his excessive use of unpaid time off. Doc. 52 at 8 ¶ 23; Doc. 54 at 18 ¶ 23. Specifically, Mr. Flint advised Plaintiff that, going forward, if he required time off for continued medical reasons he would need to apply for FMLA leave, as previously discussed. *Id.* In June 2016, Plaintiff was again disciplined—this time for downloading customer data in violation of Defendant's security policies. Doc. 52 at 8 ¶ 25; Doc. 54 at 19 ¶ 25.

On September 2, 2016, after Plaintiff requested time off to attend a social event, Mr. Flint informed Plaintiff that he had already missed a quarter of his Saturday shifts in 2016. Doc. 52 at 9 ¶ 27; Doc. 54 at 19-20 ¶ 27. Less than a week later, on September 7, 2016, Mr. Flint learned that Plaintiff had stayed late without permission on September 2, 2016, in violation of the April 2016 verbal memorandum. Doc. 52 at 9 ¶ 28; Doc. 54 at 20 ¶ 28.

### D. Plaintiff's Termination

On September 8, 2016, Plaintiff was scheduled to work a shift beginning at 8 a.m. Doc. 52 at 9 ¶ 29; Doc. 54 at 20 ¶ 29. Plaintiff arrived several hours late for his shift. *Id.* Plaintiff did not notify Defendant before his shift started that he was going to be absent or late. *Id.* He first advised Defendant that he would be arriving late at 11:45 a.m. *Id.*

Plaintiff testified in his deposition that he was experiencing pain that morning. Doc. 52 at 9 ¶ 30; Doc. 54 at 20-21 ¶ 30. He called his insurance company when he got up and got ready for work while he was on the phone. *Id.* Plaintiff also called his doctor's office and left a message. *Id.* Although he was in pain, Plaintiff testified that he intended to go to work. *Id.* However, without

setting an alarm, and while his phone was plugged in performing a software update, he laid down in an attempt to alleviate the pain and unexpectedly fell asleep. *Id.* When Plaintiff woke up several hours later, he thought he was in trouble and would "need to get into work immediately." *Id.* Plaintiff emailed his team lead at this point to let her know that he would be late. Doc. 52 at 10 ¶ 31; Doc. 54 at 21 ¶ 31.

Following this incident, Mr. Flint emailed individuals in Human Resources to discuss the situation and solicit their input regarding potential disciplinary action. Doc. 52 at 11 ¶ 40; Doc. 54 at 23-24 ¶ 40; Doc. 54-10. Mr. Flint wrote:

> [Plaintiff] did not arrive at his scheduled shift time this morning without notifying any member of our team. He did arrive 4 hours after his shift was scheduled to start. He has been given a written warning for this previously on 3/2/16 as this constitutes a no call no show. He originally painted the picture that there was nothing he could have done to notify us. In the email I attached he somewhat admitted there would have been ways to contact us before showing up to work. He always brings up his illness, Crohn's Disease, and I'm not doubting the legitimacy of it, but this shouldn't prevent him notifying us of an absence. I feel this cycle will continue with him as it always has. Is this grounds to terminate or should I address it in another way?

Doc. 54 at 8 ¶ 27; Doc. 57 at 43 ¶ 27; Doc. 54-10. Ultimately, Human Resources supported Mr. Flint's decision. Doc. 52 at 11-12 ¶ 40; Doc. 54 at 23-24 ¶ 40. Defendant terminated Plaintiff's employment effective September 9, 2016. Doc. 50 at 2.

Following his termination, on February 13, 2017, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Doc. 50 at 2; Doc. 1-1. The EEOC issued Plaintiff a notice of right to sue letter on August 3, 2017, and Plaintiff proceeded to file this action on October 9, 2017, alleging claims under the FMLA for retaliation and interference and claims under the ADAAA for failure to accommodate, disability discrimination, and

retaliation. Doc. 50 at 2; Doc. 1-2; Doc. 1. Defendant now moves for summary judgment on all claims. Doc. 51.

## II.    STANDARD

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In applying this standard, courts must view the facts and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.    ANALYSIS

In this action, Plaintiff asserts claims for: (1) FMLA interference; (2) retaliation under the FMLA; (3) failure to accommodate under the ADAAA; (4) ADAAA retaliation; and (5) disability discrimination under the ADAAA. Doc. 50. Plaintiff's claims stem from his allegations regarding his alleged disability—Crohn's disease—and the circumstances surrounding his separation from employment. *Id.* In its motion for summary judgment, Defendant contends each of Plaintiff's claims fails as a matter of law. Docs. 51-52. The Court first addresses Plaintiff's claims under the FMLA.

### A.  FMLA Claims

Plaintiff asserts two alternate claims under the FMLA: (1) Defendant interfered with his right to take FMLA leave, in violation of 29 U.S.C. § 2615(a)(1); and (2) Defendant retaliated

against him for taking FMLA leave, in violation of 29 U.S.C. § 2615(a)(2). Doc. 50. The Tenth Circuit recognizes that these two theories of recovery—the interference theory arising under § 2615(a)(1) and the retaliation theory arising under § 2615(a)(2)—are separate and distinct and therefore require different showings and differ with respect to the burden of proof and the timing of the adverse action. *Dalpiaz v. Carbon Cty., Utah*, 760 F.3d 1126, 1131 (10th Cir. 2014). The Court begins by addressing Plaintiff's interference claim under § 2615(a)(1).

### 1. FMLA Interference

Section 2615(a)(1) of the FMLA prohibits qualifying employers[5] from "interfer[ing] with, restrain[ing] or deny[ing] the exercise of or the attempt to exercise, any right provided under" the FMLA. In this lawsuit, Plaintiff argues that Defendant interfered with his right to FMLA leave by failing to excuse absences incurred as a result of his alleged Crohn's disease and, ultimately, terminating his employment due to those absences. Doc. 50 at 9.

Defendant argues in its motion for summary judgment that this claim fails because Plaintiff cannot show he was entitled to FMLA leave or that he followed Defendant's policies for requesting leave. Doc. 52 at 2. Defendant further argues that Plaintiff cannot survive summary judgment because Defendant would have terminated him for his continued attendance issues regardless of any FMLA request. *Id.* For the following reasons, the Court agrees with Defendant and finds that summary judgment is warranted on Plaintiff's claim for FMLA interference.

To establish an interference claim, the plaintiff must show (1) that he is entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights. *Sabourin v. Univ. of Utah*, 676 F.3d 950, 958 (10th Cir. 2012). Once a plaintiff proves his

---

[5] Here, the parties stipulate that Defendant is a qualified employer within the meaning of the FMLA. Doc. 50 at 2.

employer has interfered with his right to FMLA leave, the employer bears the burden of proving that the plaintiff would have been dismissed regardless of his request for, or taking of, FMLA leave. *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1289 (10th Cir. 2007). Put differently, an employer can defend an interference claim by showing that the dismissal would have occurred regardless of the plaintiff's request for or taking of FMLA leave.[6] *Sabourin*, 676 F.3d at 958; *see also Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164 (10th Cir. 2006) (even if the plaintiff makes a prima facie case of FMLA interference, the employer will still prevail if it shows that the plaintiff would have been dismissed regardless of his request for, or taking of, FMLA leave). Courts are mindful that, under the FMLA, "an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir.1998).

Plaintiff's claim for FMLA interference fails on several independent bases. First, in order to establish the first element of his prima facie case—that he is entitled to FMLA leave—Plaintiff must show that he complied with FMLA regulations regarding notice of his intent to take leave. Plaintiff cannot make this showing, so his claim necessarily fails.

To request leave, FMLA regulations require that an employee give proper notice to his employer of his intent to take leave. In pertinent part, 29 C.F.R. § 825.302—which prescribes the contents of such notice—states:

> An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave . . . In the

---

[6] Unlike claims for FMLA retaliation, *see infra* Part III.A.2, the Tenth Circuit has rejected the contention that FMLA interference claims should be analyzed under the *McDonnell Douglas* burden-shifting scheme. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 963 (10th Cir. 2002). As a result, when an employer defends an FMLA interference claim on the ground that it would have terminated the plaintiff anyway, courts place the burden of persuasion on the employer to prove that defense. *Sabourin*, 676 F.3d at 962.

case of medical conditions, the employer may find it necessary to inquire further to determine if the leave is because of a serious health condition and may request medical certification to support the need for such leave.

29 C.F.R. § 825.302(c). FMLA regulations further require that employees comply with their employer's "usual and customary notice and procedural requirements" when requesting leave, absent "unusual circumstances." *Id.* at § 825.302(d). Examples of "unusual circumstances" include "situations such as when an employee is unable to comply with the employer's policy that requests for leave should be made by contacting a specific number because on the day the employee needs to provide notice of his or her need for FMLA leave there is no one to answer the call-in number and the voice mail box is full." *Id.* Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify that failure to comply, FMLA leave may be delayed or denied. *Id.*

Here, there is no evidence that Plaintiff notified Defendant of his intent to take FMLA leave, nor is there any evidence that Plaintiff submitted the required medical certification to support his need for such leave. Although Plaintiff contends he faxed paperwork to Ms. Markham in Human Resources requesting intermittent FMLA leave to cover absences related to his Crohn's disease, the only "evidence" Plaintiff presents to support this contention is the vague and self-serving testimony in his affidavit, stating simply that he faxed the required paperwork sometime in June or July 2016. *See* Doc. 54-3 at 1.

Indeed, the record, taken as a whole, indicates Plaintiff never submitted the requisite documents. Plaintiff has presented neither originals nor copies of the FMLA paperwork, nor has he produced any confirmation or other receipt showing the paperwork was transmitted. Doc. 52 at 13 ¶ 52; Doc. 54 at 26 ¶ 52. Likewise, there is no notation in Plaintiff's medical records indicating that he requested his doctor complete any FMLA paperwork, that any FMLA paperwork was in

fact completed, or that any FMLA paperwork was faxed or otherwise provided to him, despite the presence of such notations related to other paperwork. Doc. 52 at 14 ¶ 54; Doc. 54 at 27 ¶ 54. There is also no testimony or other evidence from Plaintiff's doctor or his doctor's staff that the paperwork was sent. Defendant's records from Kronos do not reflect any FMLA hours for Plaintiff. Doc. 52 at 14 ¶ 59; Doc. 54 at 28 ¶ 59. There is no indication in the record that Plaintiff followed up with Defendant about his alleged leave request.

Simply put, apart from his vague and self-serving affidavit, there is no evidence that Plaintiff submitted the required paperwork. And this self-serving affidavit cannot create a fact issue precluding summary judgment. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (although "[m]aterial factual disputes cannot be resolved at summary judgment based on conflicting affidavits . . . [t]o come within the protection of this rule . . . the nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient" (emphasis added)).

Second, even if Plaintiff was able to show that he submitted the requisite documents, Plaintiff did not follow Defendant's usual and customary notice and procedural requirements for requesting leave, and he has not shown any unusual circumstances justifying his failure to do so. Defendant's attendance policy for CS employees provides that "[i]f a CS employee is going to be late, he or she should contact his or her support leader or the support manager via telephone, and inform him or her of the situation prior to the start of the shift." Doc. 52 at 5 ¶ 9; Doc. 54 at 13 ¶ 9. When unable to meet his work schedule because of illness, a CS employee must call in at least two hours before the start of his shift. *Id.* Defendant expressly applies these procedures to employees needing FMLA leave, who are directed to "follow [Defendant's] usual and customary call-in procedures, absent unusual circumstances." Doc. 54 at 7 ¶ 10; Doc. 57 at 39 ¶ 10.

Plaintiff acknowledges that he was aware of these requirements. Doc. 52 at 6 ¶ 18; Doc. 54 at 16 ¶ 18. Nonetheless, he repeatedly—and admittedly—violated these requirements, including on September 8, 2016, his final attendance violation before his termination. And Plaintiff has failed to come forward with evidence of any unusual circumstances to justify his failure to adhere to these guidelines. In fact—given Plaintiff's testimony that, despite the pain, he was able to call both his insurance company and his doctor's office on the morning of September 8, 2016 (Doc. 52 at 9 ¶ 30; Doc. 54 at 20-21 ¶ 30)—the evidence suggests there were no unusual circumstances that would justify his failure to call in to notify Defendant of his anticipated tardiness.

Courts have held that the FMLA regulation governing an employee's failure to comply with the employer's usual notice and procedural requirements expressly permits employers to condition FMLA leave upon the employee's compliance with those requirements (absent unusual circumstances). *See, e.g.*, *Acker v. Gen. Motors, LLC*, 853 F.3d 784, 790 (5th Cir. 2017); *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614 (6th Cir. 2013). Discipline resulting from the employee's failure to do so does not constitute interference with the exercise of FMLA rights. *Id.* For the foregoing reasons, the Court grants Defendant's motion for summary judgment on Plaintiff's claim for FMLA interference.

### 2. FMLA Retaliation

In addition to its prohibition on interference, the FMLA also forbids employers from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 2615(a)(2). Plaintiff asserts a claim for FMLA retaliation, arguing that Defendant unlawfully retaliated against him by terminating him in response to his request for FMLA leave. Doc. 50 at 10.

In its motion for summary judgment, Defendant argues Plaintiff's retaliation claim fails because he has not produced—and indeed cannot produce—evidence he engaged in any protected activity. Doc. 52 at 2. Defendant further argues that, even if Plaintiff could make a prima facie case of FMLA retaliation, he cannot show that Defendant's articulated reasons for his termination are pretextual. *Id.* For the following reasons, the Court agrees.

Unlike claims for FMLA interference, the Tenth Circuit has held that retaliation claims under the FMLA are subject to the *McDonnell Douglas* burden-shifting analysis.[7] *Metzler*, 464 F.3d at 1170; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The first prong of the *McDonnell Douglas* framework requires the plaintiff to establish a prima facie case of retaliation. *Metzler*, 464 F.3d at 1170. To establish a claim for FMLA retaliation, the plaintiff must show (1) he engaged in a protected activity, (2) the employer took an action that a reasonable employee would have found materially adverse, and (3) there exists a causal connection between the protected activity and the adverse employment action. *Id.* at 1171.

Second, once a prima facie case has been established, the employer has the burden of producing evidence of a legitimate, non-retaliatory reason for the adverse action. *Id.* at 1170. This burden is one of production, not persuasion; it can involve no credibility assessment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (applying *McDonnell Douglas* framework in the context of an ADEA action).

---

[7]  The Court notes that *McDonnell Douglas*'s burden-shifting scheme applies only where there is no direct evidence of retaliation. *Nealey v. Water Dist. No. 1 of Johnson Cty., Kan.*, 324 F. App'x 744, 748 (10th Cir. 2009) (where the plaintiff lacks direct evidence of retaliation, claim is properly analyzed under the *McDonnell Douglas* burden-shifting framework). In his opposition, although Plaintiff disputes the applicability of this framework to his ADAAA discrimination claim (*see infra* note 11), he does not make this argument with respect to his FMLA retaliation claim. Doc. 54 at 40-41. Indeed, in opposing summary judgment on this claim, Plaintiff argues only that he has established a prima facie case of retaliation and does not even mention—let alone employ—the remainder of the *McDonnell Douglas* analysis. *Id.* The Court is left to assume that Plaintiff does not dispute the applicability of the *McDonnell Douglas* framework to his FMLA retaliation claim and, regardless, the Court finds that Plaintiff has not presented any direct evidence of retaliation so as to justify deviating from that framework here.

Third, provided the employer satisfies the second step, the plaintiff bears the burden of demonstrating that the employer's proffered reason is pretext for intentional discrimination. *Metzler*, 464 F.3d at 1170. In analyzing a plaintiff's claim of pretext, courts examine the facts as they appear to the individual making the termination decision; the court's role is not to "second guess" the employer's business judgment. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017); *see Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) ("[O]ur role is to prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments."). Nor is the court's role to ask whether the decision was wise, fair, or correct. *Dewitt*, 845 F.3d at 1307. Rather, the court must determine whether the employer honestly believed the legitimate, non-retaliatory reason it gave for its conduct and acted in good faith on that belief. *Id.* Mere conjecture that the employer's explanation is pretext is not enough to justify denial of summary judgment. *Id.*

To show pretext, a plaintiff must demonstrate "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions'" in the employer's proffered reason for its action such that a reasonable factfinder could find that reason unworthy of credence and infer the employer did not act for the asserted reason. *Id.* (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). This may be accomplished through (1) evidence that the employer's stated reason for its action was false, (2) evidence that the employer acted contrary to a written company policy prescribing the action to be taken under the circumstances, or (3) evidence that the plaintiff was treated differently than other similarly-situated employees who violated work rules of comparable seriousness. *Id.* Ultimately, because the Tenth Circuit analyzes FMLA retaliation claims under the *McDonnell Douglas* framework, all the employer need do is assert a non-

retaliatory motive, and the employee must then produce evidence showing the asserted motive is pretextual. *Sabourin*, 676 F.3d at 961-62.

Plaintiff's FMLA retaliation claim fails for several reasons. First, as discussed above, Plaintiff has not produced any evidence that he asserted his FMLA rights by submitting the requisite paperwork. Defendant cannot retaliate against Plaintiff if it never knew Plaintiff was on— or considered himself to be on—FMLA leave. As other circuits have noted, because an employer's intent is highly relevant in an FMLA retaliation claim, an employer cannot be found to have retaliated unless they knew or should have known that the plaintiff had invoked his FMLA rights. *Chase v. U.S. Postal Serv.*, 843 F.3d 553, 558 (1st Cir. 2016).

Second, Plaintiff cannot satisfy his burden of establishing a prima facie case of retaliation because (1) he did not engage in any protected activity and (2) even if he did, he cannot show a causal connection between the alleged protected activity and his termination. As set forth above, there is no evidence that Plaintiff ever submitted his FMLA paperwork requesting leave. Rather, the evidence compels the opposite conclusion—that Plaintiff never sent his paperwork to Human Resources as required. *See supra* Part III.A.1. And, with respect to the third element of his prima facie case (causal connection), this Circuit has held that an employer's lack of knowledge of protected activity precludes an inference of a causal connection. *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) ("[T]o establish a 'causal connection,' plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity."); *see also Hinson v. U.S.D. No. 500*, 187 F. Supp. 2d 1297, 1311 (D. Kan. 2002) ("[E]vidence of the acting party's knowledge is essential to establishing a causal connection between the adverse action and the protected activity. Absent a showing of such knowledge, no inference of causation is possible.").

Third, even if Plaintiff was able to establish his prima facie case, Plaintiff cannot show that Defendant's proffered reason for its action—Plaintiff's poor attendance—was pretext for intentional discrimination. To establish pretext, Plaintiff appears to point to evidence of other allegedly similarly-situated employees who he claims committed similar attendance violations yet were not terminated. Courts recognize that a plaintiff may show pretext through evidence that he was treated differently than other similarly-situated, nonprotected employees who violated work rules of comparable seriousness. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 540 (10th Cir. 2014). Employees are "similarly situated" where they share the same supervisor or decision maker. *Id.* Similarly-situated employees must also have been disciplined for conduct of comparable seriousness in order for their disparate treatment to be relevant. *Id.* at 541.

Here, however, Plaintiff has not established that the employees he identifies were similarly situated. Indeed, Plaintiff claims simply that "Defendant's treatment of [Plaintiff's] similarly-situated coworkers and subjective application of its attendance policies . . . [is] evidence that Defendant's proffered reason for termination is pretextual." Doc. 54 at 48. Plaintiff does not attempt to show that these "similarly-situated coworkers" shared the same supervisor as Plaintiff or that their conduct was of comparable seriousness. In the absence of such information, the record is devoid of any evidence tending to show that Defendant's articulated reason for Plaintiff's termination was mere pretext. The Court therefore grants Defendant's motion for summary judgment on Plaintiff's FMLA retaliation claim.

**B. ADAAA Claims**

Having resolved Plaintiff's FMLA claims, the Court next addresses his ADAAA claims. The ADAAA prohibits covered employers[8] from discriminating against "qualified individuals" with disabilities—i.e., those employees "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). As set forth above, Plaintiff asserts three separate theories of relief under the ADAAA: (1) failure to accommodate, (2) retaliation, and (3) disability discrimination. Doc. 50. Defendant argues Plaintiff cannot establish a right to recovery on any of his ADAAA theories because Plaintiff cannot show he was a "qualified individual" within the meaning of the ADAAA. Doc. 52 at 3. The Court addresses this overarching argument, as well as Defendant's specific arguments with respect to each of Plaintiff's ADAAA claims, as follows.

**1. Failure to Accommodate Under the ADAAA**

In support of his first claim under the ADAAA, Plaintiff asserts that Defendant failed to accommodate his alleged disability—his Crohn's disease—by refusing to allow him flexibility in adhering to Defendant's call-in notification process for unscheduled tardiness or absences. Doc. 50 at 4-5, 9. As set forth above, Defendant argues this claim fails because Plaintiff cannot establish he was a "qualified individual" under the ADAAA. Doc. 52 at 3. Defendant also argues Plaintiff cannot produce evidence that he requested any accommodation, let alone a reasonable one. *Id.* For the following reasons, the Court agrees with Defendant and finds that summary judgment is warranted on Plaintiff's claim for failure to accommodate.

---

[8] As with Plaintiff's claims under the FMLA, the parties have stipulated that Defendant falls within the coverage of the ADAAA. Doc. 50 at 2.

The ADAAA provides a cause of action for those disabled employees whose employers fail to reasonably accommodate them. 42 U.S.C. § 12112(b)(5)(A) (prohibiting an employer from discriminating against an employee by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee"). Failure to accommodate claims are not analyzed under the *McDonnell Douglas* framework; rather, the Tenth Circuit has developed a modified burden-shifting framework under which courts are to assess such claims. *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017).

Under this modified framework, the plaintiff must first establish a prima facie case: (1) that he is disabled under the ADAAA, (2) that he is "otherwise qualified," and (3) that he requested a "plausibly reasonable accommodation." *Id.* Once the plaintiff makes this showing, the burden shifts to the employer to present evidence either (1) rebutting one or more elements of the prima facie case, or (2) establishing an affirmative defense. *Id.* If the employer does either of these two things, summary judgment is appropriate unless the plaintiff can produce evidence establishing a genuine dispute regarding the affirmative defenses or rehabilitates any of the challenged elements of his prima facie case. *Id.*

Because Plaintiff is unable to satisfy his burden of establishing a prima facie case, his failure to accommodate claim fails. First, Plaintiff cannot show that he is "otherwise qualified" so as to satisfy the second element of his prima facie case. Although the ADAAA was enacted to place disabled employees on an "equal footing" with their non-disabled counterparts, the statute was not meant to give those with disabilities an unfair advantage. *Duvall v. Ga.-Pac. Consumer Prods., L.P.*, 607 F.3d 1255, 1262 (10th Cir. 2010) (citing *Kornblau v. Dade Cty.*, 86 F.3d 193, 194 (11th Cir. 1996) ("The purpose of the [ADAAA] is to place those with disabilities on an equal footing, not to give them an unfair advantage.")). To be covered under the ADAAA, therefore, a

disabled employee "must be capable of performing the essential core of the job at issue." *Id.*; *see also Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007) (holding that "one who cannot perform the essential functions of the job, even with a reasonable accommodation, is not an 'otherwise qualified' individual" under the ADAAA).

The Tenth Circuit applies a two-part analysis to determine whether an individual meets this standard:

> First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue. Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions.

*White v. York Int'l Corp.*, 45 F.3d 357, 361-62 (10th Cir. 1995) (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393-94 (5th Cir. 1993)). The plaintiff bears the burden of demonstrating he can perform the essential functions of his position. *Miller v. BNSF Ry. Co.*, 2016 WL 2866152, at *9 (D. Kan. 2016). Courts must give consideration to the employer's judgment as to what functions of a job are "essential." 42 U.S.C. § 12111(8).

Here, Plaintiff has not shown he can perform the essential functions of his position. The uncontroverted evidence shows that Plaintiff repeatedly violated Defendant's attendance policies throughout the course of his employment—even after he was reminded of those policies and advised that breaking them could result in termination. In his opposition, Plaintiff argues that regular, predictable, and punctual attendance is not an "essential function" of his job. Doc. 54 at 42-44. The Court is not persuaded by this argument[9] and, regardless, this Circuit has held that

---

[9] Indeed, the Court finds Plaintiff's argument that "punctual" attendance is not an essential job responsibility disingenuous. Defendant's CS Handbook contains a section devoted to punctuality—aptly titled "Guidelines for Punctuality"—which provides a detailed protocol that CS employees must follow in the event they will be late.

attendance is generally an "essential" function of any job. *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000), *overruled on other grounds by Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001).

Because the Court therefore concludes that Plaintiff has not shown he is able to perform the essential functions of his job, we must determine whether any reasonable accommodation would enable him to do so. In this lawsuit, Plaintiff suggests it would have been reasonable for Defendant to provide him "flexibility as to when he could notify Defendant of an unscheduled tardiness or absence." Doc. 50 at 5. The Court disagrees that such an arrangement would constitute a "reasonable accommodation," as it would effectively vitiate an essential function of Plaintiff's job: regular, punctual attendance. As discussed above, attendance is generally an essential function of any job and Plaintiff has not shown that his position is any different. Indeed, the nature of the TSA I position—which includes answering customer calls, many of which are emergent or urgent, in a department ostensibly providing technical support 24 hours per day, 365 days per year— indicates that regular attendance <u>was</u> a necessary function of Plaintiff's job. "An accommodation that eliminates the essential function of the job is not reasonable." *Smith v. Blue Cross Blue Shield of Kan., Inc.*, 102 F.3d 1075, 1076 (10th Cir. 1996). To that end, courts in this district have found requests such as Plaintiff's—i.e., requests "to dispense with the punctual attendance requirement"—unreasonable. *Miller*, 2016 WL 2866152, at *10-11.

Second, Plaintiff's accommodation claim fails because he cannot establish the third element of his prima facie case—that he requested a "plausibly reasonable accommodation." As a result, Defendant's obligation under the ADAAA to provide accommodation was never triggered.

---

Doc. 52 at 5 ¶ 9; Doc. 54 at 13 ¶ 9. Furthermore, punctuality is inherent in any attendance requirement; employers do not hire people to show up late.

To facilitate a reasonable accommodation, the ADAAA's implementing regulations envision an interactive process between the employer and employee. *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 916 (10th Cir. 2004); *see also* 29 C.F.R. § 1630.2(o)(3). However, before an employer's duty to provide reasonable accommodation (or to participate in the "interactive process") arises, an employee must first make an adequate request thereby putting the employer on notice of the need for accommodation. *EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011). The request need not be in writing, be made by the employee, or even expressly invoke the words "reasonable accommodation," but it must make clear that the employee wants assistance for his disability. *Id.* In other words, to be on notice, the employer must know of both the disability and the employee's desire for accommodation. *Id.* Here, there is no evidence that Plaintiff ever requested the proposed accommodation (that Defendant provide flexibility as to when Plaintiff could notify Defendant of an unscheduled tardiness or absence). Doc. 50 at 5.

And, to the extent Plaintiff now requests retroactive leniency for his attendance violations, this is not a reasonable accommodation under the ADAAA. *Dewitt*, 845 F.3d at 1316. Indeed, the Tenth Circuit has held that "the ADAAA does not require employers to accommodate disabled employees by overlooking a past violation of a workplace rule, regardless of whether that violation was caused by the employee's disability." *Id.*; *see also Davila v. Quest Corp.*, 113 F. App'x 849, 854 (10th Cir. 2004) ("[E]xcusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the [ADAAA]."). This holding is in line with the EEOC's Enforcement Guidance, which "makes clear that the requirement to provide reasonable accommodations under the ADAAA is 'always prospective,' and that 'an employer is not required to excuse past misconduct even if it is the result of the individual's disability.'" *Dewitt*, 845 F.3d at 1316 (quoting

U.S. Equal Employment Opportunity Comm'n, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act at No. 36).

Accordingly, Plaintiff's ADAAA accommodation claim must fail. For these reasons, the Court grants Defendant's motion for summary judgment on Plaintiff's claim for failure to accommodate.

### 2. ADAAA Retaliation

Plaintiff next claims Defendant unlawfully retaliated against him by terminating his employment in response to his request for accommodation. Doc. 50 at 9. Defendant again argues that Plaintiff cannot establish he was a "qualified individual" within the meaning of the ADAAA. Doc. 52 at 3. Defendant argues Plaintiff's claim fails on the additional basis that he cannot show a causal connection between his alleged disability and his termination, and, further, because Plaintiff cannot show that its asserted reason for his termination is unworthy of belief. *Id.* The Court agrees with Defendant.

Section 12203(a) of the ADAAA—prohibiting employer "retaliation and coercion"— provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a prima facie case of ADAAA retaliation, a plaintiff must show: "(1) he engaged in a protected activity; (2) he was subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse employment action." *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1187 (10th Cir. 2016).

Like claims for FMLA retaliation, *see supra* Part III.A.2, claims for retaliation under the ADAAA are subject to the *McDonnell Douglas* framework. [10] *Dewitt*, 845 F.3d at 1306-07. If the plaintiff establishes a prima facie case of retaliation, therefore, the burden shifts to the employer to offer a legitimate, non-retaliatory reason for its action. *Id.* at 1308. If the employer articulates such a reason, the burden shifts back to the plaintiff to show a genuine issue of material fact regarding whether the employer's reason for its action is mere pretext. *Id.*

First, Plaintiff cannot establish a prima facie case of ADAAA retaliation. Plaintiff's retaliation claim fails for the same threshold reason as his failure to accommodate claim: Plaintiff is not a qualified individual within the meaning of the ADAAA. *See supra* Part III.B.1. And Plaintiff also cannot show he engaged in the requisite protected activity to satisfy the first element of his prima facie case because—again, as discussed in Part III.B.1—he has not produced evidence that he requested an accommodation from Defendant before his termination.

Second, even if he could make out a prima facie case, Defendant has put forth a legitimate, non-retaliatory reason for Plaintiff's termination, and Plaintiff has not shown that reason is pretext for intentional discrimination. Defendant has satisfied its burden under the second prong of the *McDonnell Douglas* framework—that is, Defendant has articulated a non-retaliatory reason for terminating Plaintiff's employment—by pointing to evidence that he was terminated for repeated violations of Defendant's attendance policies. Because Defendant has put forth an acceptable justification for its actions, the burden shifts back to Plaintiff to show Defendant's proffered reason was mere pretext. Plaintiff's claim fails because he has not carried that burden. For the same reasons set forth in Part III.A.2 with respect to his FMLA retaliation claim, Plaintiff has not shown

---

[10] As with his FMLA retaliation claim, Plaintiff does not appear to dispute the applicability of the *McDonnell Douglas* framework to his ADAAA retaliation claim. But to the extent Plaintiff does challenge this, for the reasons set forth in note 11, *infra*, the Court finds that Plaintiff has not presented any direct evidence of retaliation and the Court must therefore proceed under the *McDonnell Douglas* analysis.

such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's articulated reason—Plaintiff's poor attendance—to enable a reasonable factfinder to rationally find that his disability, not his violations of Defendant's attendance policies, motivated his termination. Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADAAA retaliation claim.

### 3. Disability Discrimination Under the ADAAA

In his final claim under the ADAAA, Plaintiff argues he was unlawfully discriminated against, alleging Defendant disciplined him and terminated his employment on the basis of his Crohn's disease. Doc. 50 at 4-5, 9. Defendant again argues it is entitled to summary judgment because Plaintiff cannot establish he was a "qualified individual" within the meaning of the ADAAA. Doc. 52 at 3. For the following reasons, the Court finds that summary judgment is warranted on Plaintiff's claim for disability discrimination.

The ADAAA prohibits covered employers from discriminating against "a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). To establish a prima facie case for discrimination under the ADAAA, the plaintiff must show: (1) he is a disabled person as defined by the ADAAA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) he suffered discrimination by an employer or prospective employer because of that disability. *Dewitt*, 845 F.3d at 1308. The plaintiff's standard for showing he is a qualified individual is set forth in Part III.B.1, *supra*. A plaintiff endures "discrimination" within the meaning of the third prong where he suffers an "adverse employment action" because of his disability. *Id.* As with his claims for FMLA and ADAAA retaliation, *see supra* Parts III.A.2 and III.B.2, the Court analyzes

Plaintiff's claim for ADAAA discrimination under the *McDonnell Douglas* burden-shifting scheme. [11] *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1207-08 (10th Cir. 2007).

Applying that framework to this claim, the Court concludes the claim fails as a matter of law. First, for the reasons set forth in Part III.B.1, Plaintiff is not a qualified individual within the meaning of the ADAAA. He therefore cannot satisfy the second element of his prima facie case and his claim necessarily fails. *See Cisneros*, 226 F.3d at 1128 ("[E]ven if Defendants discriminated against Plaintiff, if Plaintiff was not a 'qualified individual with a disability,' then the [ADAAA] provides no redress for that wrong.").

Second, for the reasons set forth with respect to his ADAAA retaliation claim, *see supra* Part III.B.2, Plaintiff's claim fails because he has not carried his burden on summary judgment as to the pretext component of the *McDonnell Douglas* framework. That is, Plaintiff identifies no evidence from which a reasonable factfinder could rationally conclude that his disability, not his continued attendance issues, motivated his termination. The Court therefore grants summary judgment in Defendant's favor on Plaintiff's claim for disability discrimination under the ADAAA. And, because summary judgment is warranted on all of Plaintiff's claims, the Court grants Defendant's motion for summary judgment.

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion for Summary Judgment (Doc. 51) is GRANTED.

---

[11] In his opposition to Defendant's motion, Plaintiff argues that the September 8, 2016 email from Mr. Flint to Human Resources constitutes direct evidence of discrimination such that the *McDonnell Douglas* analysis does not apply. Doc. 54 at 46-47; *Nealey*, 324 F. App'x at 748. The Court disagrees that Mr. Flint's reference to "Crohn's disease" in his email is direct evidence of discrimination. As Defendant points out in its reply, the focus of Mr. Flint's message was Plaintiff's failure to call in before the start of his shift. Mr. Flint's passing reference to Plaintiff's alleged Crohn's disease does not justify application of the direct evidence standard. The Court therefore proceeds under the *McDonnell Douglas* framework.

THE COURT FURTHER ORDERS that Plaintiff's Motion for Leave to File a Sur-Reply in Opposition to Defendant's Motion for Summary Judgment (Doc. 58) is DENIED as MOOT.

IT IS SO ORDERED.

Dated: February 28, 2019                          /s/ *Holly L. Teeter*
                                                   HOLLY L. TEETER
                                                   UNITED STATES DISTRICT JUDGE